UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-CR-201-MOC-DCK

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| DANIEL DWAYNE WOOD, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's Motion to Suppress. (Doc. No. 14). The Court held a hearing on the motion on January 9, 2023. At the conclusion of the hearing, the Court entered a verbal order denying the motion to suppress. This Order memorializes the Court's reasons for denying the motion to suppress.

## FINDINGS AND CONCLUSIONS

### I. BACKGROUND

On May 1, 2022, S.B. was employed as part of the security team at Explicit Bistro and Lounge in Charlotte, North Carolina. As part of S.B's duties on the security team, S.B. frisked patrons for weapons before they were allowed to enter the lounge premises. During the evening hours of May 1, 2022, Defendant was in line to enter the lounge, and S.B. patted Defendant down. During the weapons frisk, S.B. felt a heavy object in Defendant's pants pocket, reached inside the pocket, and pulled out a firearm. When the firearm was discovered, Defendant began walking towards the parking lot. S.B. secured the firearm. Another member of the Explicit Bistro and Lounge security team gave the firearm to Officer Johnson, an off-duty Charlotte Mecklenburg Police Department ("CMPD") officer, who was parked in a nearby parking lot.

Officer Johnson began running a computer check to determine if the firearm was stolen. While officer Johnson was sitting in his patrol vehicle, Defendant walked up to the officer's vehicle and told officer Johnson that Defendant's father had given him the gun to put away for safe keeping. Defendant had been previously convicted of a felony at the time of this incident, and the firearm was manufactured outside of North Carolina.

## II. DISCUSSION

In his motion to suppress, Defendant seeks the suppression of the firearm recovered by S.B. and turned over to CMPD officer Johnson.[1] "The Fourth Amendment applies to a search conducted by a private citizen only if that individual is acting as an agent of the Government or with the participation or knowledge of any governmental official." United States v. Ellyson, 326 F.3d 522, 527 (4th Cir. 2003). "The burden of proving that a private party acted as an agent or instrument of the government is on the defendant." Id. Courts consider two factors in determining whether the search of a private citizen constitutes a search by the Government. "These are: (1) whether the Government knew of and acquiesced in the private search; and (2) whether the private individual intended to assist law enforcement or had some other independent motivation." United States v. Jarrett, 338 F.3d 339, 344 (4th Cir. 2003).

Addressing the second factor first, there is no evidence to suggest that S.B. or the owners of Explicit Bistro and Lounge, intended to assist law enforcement when frisking lounge patrons for weapons. Explicit Bistro and Lounge ownership and employees have an independent interest in keeping all persons carrying any type of weapon from entering the premises. Keeping

---

[1] Both S.B. and Officer Johnson testified at the suppression hearing.

weapons off the premises limits potentially dangerous confrontations that could lead to property damage, or cause harm to customers. The Government's interest in conducting frisks as an investigative tool is not related to the motivations of the lounge.

As to the first Jarrett factor, Defendant has failed to present any evidence that the Government knew or had acquiesced to the search. Specifically, Defendant has presented no evidence indicating that the Government instructed Explicit lounge employees to conduct searches of patrons who entered the club, trained employees on how to search, or instructed employees of the lounge to turn over any items recovered during the searches. Even simple acquiescence alone is not enough to turn a private search into a government search. Id. at 345–46. "Rather, there must be some evidence of Government participation in or affirmative encouragement of the private search before a court will hold it unconstitutional." Id. at 346. Therefore, even if the CMPD officer in this case had general knowledge that club employees were conducting searches and accepted any illegal contraband that came from the search, no evidence suggests that the CMPD officer participated or encouraged the searches. For these reasons, Defendant's request to suppress the firearm seized by law enforcement officers is denied.

Defendant next contends that because he did not receive Miranda warnings before his statement to law enforcement officers, his statement should be suppressed. "Concerns under Miranda only arise when a defendant is in custody and subjected to interrogation." United States v. Giddins, 858 F.3d 870, 879 (4th. Cir. 2017). "Whether an individual is in custody is a fact-specific, objective inquiry into the totality of the circumstances. That inquiry asks whether a reasonable person would perceive his freedom of action is curtailed to a degree associated with formal arrest." United States v. Arce, 49 F.4th 382, 389 (4th Cir. 2022).

3

Defendant was not in custody when he spoke with officers. After the firearm was discovered by S.B, it was given to a law enforcement officer in the parking lot. Defendant walked up to officers and said: "My dad gave it to me to put in the car, it was in my pocket, and I forgot it was in there because it's so small. I would never bring a firearm into the club." Defendant was not handcuffed, was asked questions by officers, and voluntarily approached officers to begin the interaction. There was nothing about Defendant's initial interaction with officers that would cause a normal person to believe that their "freedom of action [was] curtailed to a degree associated with formal arrest." Because Defendant was not in "custody" when he made his statement to law enforcement officers, Defendant's motion to suppress his statement to officers is denied.

For all the reasons stated herein, Defendant's motion to suppress is denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Suppress, (Doc. No. 14), is **DENIED**.

Signed: February 1, 2023

Max O. Cogburn Jr
United States District Judge